**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDUARDO ORTIZ, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CANOPY GROWTH CORPORATION, BRUCE LINTON, MARK ZEKULIN, and MIKE LEE, <br><br> Defendants. | Case No: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Plaintiff Eduardo Ortiz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

Defendants, public filings, wire and press releases published by and regarding Canopy Growth Corporation ("Canopy" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Canopy securities between June 21, 2019 and November 13, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Canopy securities during the Class Period and was economically damaged thereby.

7. Defendant Canopy, together with its subsidiaries, engages in engages in production, distribution, and sale of cannabis in Canada. Canopy is incorporated in Canada and has its principal executive offices located at 1 Hershey Drive, Smiths Falls, Ontario K7A 0A8, Canada. Canopy's common stock trade on the New York Stock Exchange ("NYSE") under the ticker symbol "CGC."

8. Defendant Bruce Linton ("Linton") founded the Company and served as the Company's co-Chief Executive Officer ("CEO") until July 2019.

9. Defendant Mark Zekulin ("Zekulin") served as the Company's President and co-CEO from June 2018 until July 2019, and CEO after July 2019.

10. Defendant Mike Lee ("Lee") has served as the Company's Chief Financial Officer ("CFO") since June 1, 2019.

3

11. Defendants Linton, Zekulin, and Lee are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g) approved or ratified these statements in violation of the federal securities laws.

13. Canopy is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency

because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Canopy under *respondeat superior* and agency principles.

15. Defendants Canopy and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

16. On June 21, 2019, the Company filed a Form 6-K with the SEC attaching its Audited Annual Consolidated Financial Statements and Notes thereto for the years ended March 31, 2019 and March 31, 2018, and Management's Discussion and Analysis for the year ended March 31, 2019 ("2019 Financial Results"). The Company posted fourth quarter 2019 recreational cannabis oil and softgel sales of CA$42.5 million, and fiscal year 2019 recreational cannabis oil and softgel sales of CA$85.3 million. During the Company's earnings conference call, Defendant Lee noted that "[o]il and softgel capsules accounted for 40% of gross revenue in the fourth quarter of fiscal '19, up from 21% in the fourth quarter of fiscal '18."

17. On June 26, 2019, the Company filed its annual report on Form 40-F with the SEC for the fiscal year ending March 31, 2019 (the "2019 40-F"). The 2019

40-F was signed by Defendant Lee. Attached to the 2019 40-F were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Linton, Zekulin, and Lee attesting to the disclosure of all fraud and that the 2019 40-F "fairly represents, in all material respects, the financial condition and results of operations of the Company." The 2019 40-F incorporated the 2019 Financial Results.

18.  On August 14, 2019, the Company filed a Form 6-K with the SEC containing its Consolidated Interim Financial Statements for the three months ended June 30, 2019 and 2018, and Management's Discussion and Analysis of the Financial Condition and Results of Operations for the three months ended June 30, 2019 (the "1Q 2020 Financial Results"). The Company posted net first quarter 2020 recreational cannabis oil and softgel sales of only CA$0.2 million after the Company was forced to take an CA$8 million revenue adjustment that represented "variable consideration that may result from rights of return, and which primarily relate to oils and gelcaps."

19.  The next day, August 15, 2019, the Company held a conference call to discuss their financial results for the first quarter of fiscal year 2020. During the call, Defendant Zukelin reassured investors that demand for the Company's oil and softgel products was strong:

> No it is not related to our production flow here, simply related to the product mix that we see demand for and ensuring that we allocate products appropriately to that mix. ***So certainly, as you say, our oils and softgel products remain exceptionally popular and an increasing share of our Canadian medical base and an increasing share of our global exports to medical market***. So I think it is just an indication of properly seating the market with what customers are buying at the tail.
>
> And I think it is also important to reference that at the tail part because, we still see softgel increasing in demand at the tail at the retail store with customers purchasing, right. So it is just a matter of ensuring that education continues. People understand that product increasingly better and we continue that velocity.
>
> (Emphasis added.)

20.   The statements contained in ¶¶16-19 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was experiencing weak demand for its softgel and oil products; (2) as a result, the Company would be forced to take a CA$32.7 million restructuring charge due to poor sales, excessive returns, and excess inventory; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

21. On November 14, 2019, before the market opened, the Company issued a press release announcing their earnings for the second quarter of fiscal year 2020, posting a larger-than-expected loss for the quarter. The Company announced it would be modifying its retail pricing architecture and taking a CA$32.7 million restructuring charge. The press release stated, in relevant part:

> MITHS FALLS, ON, Nov. 14, 2019 /CNW/ - Canopy Growth Corporation ("Canopy Growth" or the "Company") (TSX: WEED) (NYSE: CGC) today announced its financial results for the second quarter ended September 30, 2019. All financial information in this press release is reported in Canadian dollars, unless otherwise indicated. This press release is intended to be read in conjunction with the Company's Condensed Interim Consolidated Financial Statements and Management Discussion & Analysis for the three and six months ended September 30, 2019, which will be filed on SEDAR (www.sedar.com) and will be available at www.canopygrowth.com.
>
> Key highlights include:
>
> - The company has established leading market share across the country including a noteworthy share of over 35% in Alberta, Canada's most developed provincial recreational market.
> - Consumer demand for cannabis continues to increase versus Q1 2020 with Company-owned recreational same-store sales growth of 17% and global medical organic growth of 23%.
> - More than 30 SKUs submitted to Health Canada for Cannabis 2.0 products across chocolate, vapes, and beverage formats.
>
> ***As part of a management-initiated portfolio review, the Company has taken a restructuring charge of $32.7 million for returns, return provisions, and pricing allowances primarily related to its softgel & oil portfolio. Additionally, management has recorded an inventory charge of $15.9 million to align the portfolio with the new strategy. This new strategy includes new retail pricing architecture, a rationalized package assortment, and a focused***

>*marketing/educational strategy to further develop this category*. The Q2 2020 gross margin impact of the portfolio restructuring costs is $40.4 million. With this acute restructuring charge, management believes that current inventory levels both internally and externally are in-line with demand forecasts.
>
>Consolidated Q2 2020 gross revenue, excluding the portfolio restructuring costs, was up 6% to $118.3 million including increases from full-quarter benefits of the C3 and ThisWorks acquisitions (flat excluding incremental revenue from acquisitions). Net of the portfolio restructuring costs, revenue was $76.6 million, a decrease of 15% over Q1 2020.
>Cannabis gross revenues for Q2 2020, excluding the portfolio restructuring costs, was $94.7 million, an increase of 2% over Q1 2020.
>The Company ended Q2 2020 with $2.7 billion in cash and cash equivalents and marketable securities available for sale, with its Canadian Infrastructure and global M&A programs substantially completed.

(Emphasis added.)

22. MKM analyst Bill Kirk described the loss as "astounding," and wrote that he did "not consider this type of adjustment to be one-time, as it reflects returns and new pricing architecture and package assortment going forward."

23. On this news, shares of Canopy fell $2.36 per share or nearly 14.4% to close at $15.84 per share on November 14, 2019, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

9

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Canopy securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Canopy, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Canopy securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Canopy;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Canopy to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Canopy securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Canopy shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Canopy filed periodic public reports;

- Canopy regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and

  through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Canopy's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Canopy was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

32. Based on the foregoing, the market for Canopy securities promptly digested current information regarding Canopy from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
## For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Canopy securities during the Class Period.

38. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Canopy were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Canopy, their control over, and/or receipt and/or modification of Canopy's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Canopy, participated in the fraudulent scheme alleged herein.

39. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements

made by them or other Canopy personnel to members of the investing public, including Plaintiff and the Class.

40. As a result of the foregoing, the market price of Canopy securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Canopy securities during the Class Period in purchasing Canopy securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

41. Had Plaintiff and the other members of the Class been aware that the market price of Canopy securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Canopy securities at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff

and the other members of the Class for substantial damages which they suffered in connection with their purchase of Canopy securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of Canopy, and conducted and participated, directly and indirectly, in the conduct of Canopy's business affairs. Because of their senior positions, they knew the adverse non-public information about Canopy's misstatement of revenue and profit and false financial statements.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Canopy's financial condition and results of operations, and to correct promptly any public statements issued by Canopy which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Canopy disseminated in the marketplace during the Class Period concerning Canopy's results of operations.

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Canopy to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Canopy within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Canopy securities.

48. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Canopy.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 20, 2019    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*