UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDUARDO ORTIZ, Individually and
on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

CANOPY GROWTH CORPORATION,
BRUCE LINTON, MARK ZEKULIN,
MIKE LEE, TIM SAUNDERS, DAVID
KLEIN and RADE KOVACEVIC,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 2:19-cv-20543-KM-ESK

**Oral Argument Requested**

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS' MOTION
TO DISMISS THE "SECOND" AMENDED COMPLAINT**

Andrew Muscato
Jay B. Kasner (*pro hac vice*)
Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
One Manhattan West
New York, New York 10001
(212) 735-3000 (telephone)
(212) 735-2000 (fax)
andrew.muscato@skadden.com
jay.kasner@skadden.com
susan.saltzstein@skadden.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................iv

PRELIMINARY STATEMENT .......................................................................1

ARGUMENT ..................................................................................................4

I.   PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE FALSE OR
     MISLEADING STATEMENT UNDER SECTION 10(b) AND RULE
     10b-5 ....................................................................................................4

     A.   Plaintiffs Fail to Allege that Any Statement Was False or
          Misleading When Made ...............................................................4

          1.   Canopy Accurately Disclosed Its Inventory Supply and
               the Data It Relied On ........................................................4

          2.   Canopy's Risk Disclosures Were Targeted and
               Comprehensive..................................................................8

          3.   Canopy Disclosed Its Production of Extraction Grade
               Cannabis in the Aldergrove and Delta Facilities .......................9

     B.   Canopy's Statements Are Otherwise Non-Actionable........................11

          1.   Many of the Challenged Statements Are Forward-
               Looking ..............................................................................11

          2.   Canopy's Accounting Judgments Are Non-Actionable ..........14

               (a)   Canopy's Accounting Judgments Are Non-
                     Actionable Opinion Statements .......................................14

               (b)   Canopy's Revenue Recognition Judgments Are
                     Non-Actionable................................................................17

     C.   Plaintiffs' FE Allegations Do Not Demonstrate that the
          Individual Defendants Were Aware of Specific Contradictory
          Information at the Time They Made an Alleged Misstatement..........18

II.  PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE CONSCIOUS
     MISBEHAVIOR OR RECKLESSNESS ................................................22

III.    PLAINTIFFS' SECTION 20(a) CLAIMS SHOULD BE DISMISSED ......25

IV.    THE REQUEST FOR LEAVE SHOULD BE DENIED .............................25

CONCLUSION .................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Advanta Corp.*,
　　180 F.3d 525 (3d Cir. 1999) .......................................................................11

*In re Aetna, Inc. Securities Litigation*,
　　617 F.3d 272 (3d Cir. 2010) ...............................................................10, 12

*California Public Employees' Retirement System v. Chubb Corp.*,
　　394 F.3d 126 (3d Cir. 2004) ...............................................................18, 21

*In re Campbell Soup Co. Securities Litigation*,
　　No. 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30, 2020)3, 18, 23

*Chapman v. Mueller Water Products, Inc.*,
　　466 F. Supp. 3d 382 (S.D.N.Y. 2020) ..............................................2, 22, 24

*Dempsey v. Vieau*,
　　No. 13 CV 6883-LTS, 2016 WL 3351081 (S.D.N.Y. June 15, 2016)..........16

*Fan v. StoneMor Partners LP*,
　　927 F.3d 710 (3d Cir. 2019) .......................................................................10

*In re FedEx Corp. Sec. Litig.*,
　　No. 1:19-CV-05990 (RA), 2021 WL 396423 (S.D.N.Y. Feb. 4, 2021)..........2

*GSC Partners CDO Fund v. Washington*,
　　368 F.3d 228 (3d Cir. 2004) ...............................................................22, 25

*In re Hertz Global Holdings, Inc. Securities Litigation*,
　　No. 13–7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd sub
　　nom. In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018).14, 23, 24

*Higginbotham v. Baxter International Inc.*,
　　495 F.3d 753 (7th Cir. 2007) ......................................................................24

*Institutional Investors Group v. Avaya, Inc.*,
　　564 F.3d 242 (3d Cir. 2009) ...............................................................7, 13, 14

*In re Intelligroup Securities Litigation*,
    527 F. Supp. 2d 262 (D.N.J. 2007)...............................................3, 4, 19, 20, 24

*Janowski v. City of North Wildwood*,
    259 F. Supp. 3d 113 (D.N.J. 2017)..........................................................4, 17

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)....................................................................................3

*Leisure Pass North America, LLC v. Leisure Pass Group, Ltd.*,
    No. 2:12–cv–03375 (WJM), 2013 WL 4517841 (D.N.J. Aug. 26,
    2013) ............................................................................................................1

*Martin v. GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018)...................................................................22

*National Junior Baseball League v. PharmaNet Development Group Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010)...............................................................11

*In re Newell Brands, Inc. Securities Litigation*,
    No. 20-1292, 2020 WL 7040968 (3d Cir. Dec. 1, 2020) .......................passim

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension
    Fund*,
    575 U.S. 175 (2015)..............................................................................2, 14

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) .........................................................................9

*Pearlstein v. BlackBerry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015) ..........................................................18

*In re Prudential Financial, Inc. Securities Litigation*,
    No. 2:19-cv-20839-SRC-CLW, 2020 WL 7706860 (D.N.J. Dec. 29,
    2020) ...........................................................................................14, 16, 21, 25

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ..................................................................4, 23

*Roofer's Pension Fund v. Papa*,
    No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)..............................24

*Santa Fe Industries, Inc. v. Green*,
    430 U.S. 462 (1977)...................................................................................1, 23

*Scott v. General Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014) ...........................................................5

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ......................................................................24

*In re Synchronoss*,
    705 F. Supp. 2d 367 (D.N.J. 2010)..............................................................8

*Tanaskovic v. Realogy Holdings Corp.*,
    No. 19-15053 (SRC), 2021 WL 211049 (D.N.J. Jan. 21, 2021)............passim

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ......................................................................10

*Zhengyu He v. China Zenix Auto International Ltd.*,
    No. 2:18-15530 (KM-JAD), 2020 WL 3169506 (D.N.J. June 12,
    2020) ..........................................................................................................25

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the "SAC" in its entirety with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.") magnifies the SAC's use of long-discredited pleading techniques to critique decisions and viewpoints honestly expressed by Canopy and its executives. Plaintiffs cherry-pick quoted words from SEC filings and earnings call transcripts, misattribute the speaker and ignore context in a failed attempt to support illogical allegations. *See Tanaskovic v. Realogy Holdings Corp.*, No. CV 19-15053 (SRC), 2021 WL 211049, at *12 (D.N.J. Jan. 21, 2021) ("Seeing the full statement demonstrates that Plaintiff's conclusion here is ludicrous.").

Plaintiffs challenge business decisions of Canopy's executives (Opp. at 22-23) notwithstanding that "allegations reflecting bad business decisions (or reasonable decisions that did not pan out) do not constitute federal securities fraud." *In re Newell Brands, Inc. Sec. Litig.*, No. 20-1292, 2020 WL 7040968, at *6 (3d Cir. Dec. 1, 2020);[2] *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462,

---

[1] Capitalized terms have the same definitions as those set forth in Defendants' principal brief. (Br. at 1.)

[2] Plaintiffs do not even attempt to meaningfully distinguish *In re Newell* and its numerous citations in Defendants' Brief (Br. at 18, 19, 20, 21, 39), conceding that its holding squarely applies here. *See Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it."). This is particularly striking since this decision was affirmed by the Third Circuit prior to the filing of

479 (1977). Moreover, Plaintiffs criticize Canopy's accounting judgments even though those opinions are not actionable under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). (Br. at 30-33.)

To evade these well-established legal principles, Plaintiffs allege that the company "should have taken the charges earlier, rather than the equally compelling conclusion that [Canopy] appropriately made the adjustments based on new information it acquired." *Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 404 (S.D.N.Y. 2020); *Realogy*, 2021 WL 211049, at *7 ("[A]s the Third Circuit explained in *Chubb*, that type of reasoning alone can never satisfy the requisite pleading standard."). Essentially, Plaintiffs' "theory is one of underestimation in hindsight," which "relies on conclusory allegations to mask the legally insufficient contention at its core, which is that defendants could not possibly have believed their own estimates, since plaintiffs interpret those estimates to have proven inadequate" and should be not be credited. *Id.; In re FedEx Corp. Sec. Litig.*, No. 1:19-CV-05990 (RA), 2021 WL 396423 (S.D.N.Y. Feb. 4, 2021) ("Defendants' professed optimism . . . is an insufficient basis for securities fraud, even though hindsight suggests that such optimism may have been misguided.").

---

Plaintiffs' Opposition, a fact conspicuously ignored from Plaintiffs' cite to the district court decision. (Opp. at 24, n.113.)

2

Plaintiffs impermissibly rely "on conjecture based on subsequent events," and cite no "contemporaneous sources" sufficiently demonstrating the purported falsity of Canopy's disclosures or that Defendants[3] "were given internal warnings" concerning issues about which Plaintiffs now complain. *In re Newell*, 2020 WL 7040968 at *4. Plaintiffs rely on "Former Employees" ("FEs") who purportedly offer that Defendants "knew" that there was an overbuild of supply without being able to point to contemporaneous facts rendering Defendants' public statements "actionably unsound when made." *Id.* at *4. They instead attempt to offer their own views regarding Canopy's inventory decisions in place of well-pled facts. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 361 (D.N.J. 2007) ("[FE's] personal belief that Intelligroup's affairs were executed in a wrongful fashion" is insufficient to show scienter.).

Plaintiffs' allegations relying on FEs "at most suggest mismanagement on the part of the Individual Defendants" and are insufficient to "support a securities fraud claim." *In re Campbell Soup Co. Sec. Litig.*, No. CV 18-14385, 2020 WL 7022655, at *2, 8 (D.N.J. Nov. 30, 2020) ("statements from thirteen non-party [FEs] . . . . lack[ed] sufficient facts" to plead fraud). Plaintiffs offer new allegations in their Opposition, asserting that FEs "directly" discussed issues pertaining to

---

[3] The reference to "Defendants" throughout this brief does not concede that Plaintiffs have plead the requisite information against each defendant. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

oversupply with the Individual Defendants (Opp. at 46) despite the fact that the SAC does not support these assertions and the well-established rule that a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 120 (D.N.J. 2017) (*See e.g.*, Opp. at 41, 42, 46, 47.) But even these improper allegations do not claim that the FEs confronted the Individual Defendants with information contradictory to the alleged misstatements and do not detail "with particularity, 'the who, what, when, where and how' of the events at issue." *In re Intelligroup*, 527 F. Supp. 2d at 285 (rejecting FE statements that did not "present clear facts verifying plaintiff's deductions with respect to defendant[s] state of mind"). Such unparticularized allegations are insufficient to plead fraud and "must [be] discount[ed] . . . steeply." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 244 (3d Cir. 2013).

For these, and the reasons stated below and in Defendants' principal brief, the "SAC" should be dismissed with prejudice and without leave to amend.

## ARGUMENT

I.  **PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE FALSE OR MISLEADING STATEMENT UNDER SECTION 10(b) AND RULE 10b-5**

    A.  **Plaintiffs Fail to Allege that Any Statement Was False or Misleading When Made**

        1.  **Canopy Accurately Disclosed Its Inventory Supply and the Data It Relied On**

Plaintiffs do not dispute that Canopy disclosed its inventory supply every

quarter. *In re Newell*, 2020 WL 7040968, at *1 (dismissing claim that Company "deceived investors by misrepresenting or failing to disclose . . . excess inventory levels"); *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 396-97 (S.D.N.Y. 2014) ("excess of inventory was . . . a matter of public record" so defendant "had no obligation to label its inventories 'excessive' . . . in order to make its disclosure not misleading"), *aff'd*, 605 F. App'x 52 (2d Cir. 2015).

In their Opposition, Plaintiffs now allege that certain of Canopy's inventory-related statements are false and misleading because Canopy's disclosed strategy was predicated on the "falsehood" that "*massive* demand necessitated a massive build up" and that Defendants made "repeated" misstatements that the inventory was "scaled to meet actual demand." (Opp. at 21, 23, 24.) But Plaintiffs do not point to *any* disclosure (let alone "repeated" disclosures) discussing "massive" or "actual" demand.[4] Nor could they. Instead, Plaintiffs attempt to substitute their own words and identify only management's opinions that:

- it "continues to believe that significant demand will develop for cannabis oil . . . [and] [a]s such, the company continues to increase inventories of extract-grade dry cannabis";[5]

---

[4] Plaintiffs cannot even cite to any allegation in support of their contentions that Canopy discussed "massive" or "actual" demand. (*See* Opp. at 2, 16, 21, 23, 24, 25, 28, 31, 47, referring to purportedly misleading statements regarding "massive" and "actual" demand without a *single* citation to Canopy's disclosures.)

[5] Plaintiffs claim that the Company stated that "because of demand, 'the company continues to increase inventories.'" (Opp. at 22.) Reading the Company's actual statement however, reveals that the Company said nothing of the sort. (*Compare* Opp. at 22 *with* Ex. I, Nov. 2018 Tr. at 9.)

5

- "management's *expectation* of market demands";
- "management's *belie[fs]*" regarding "expected market demands";
- statements that "*we feel very happy* with [the] inventory level";
- statements that its inventory is based on "supply-demand *forecast*" and is not merely a "stockpiling exercise";[6]
- statements that Canopy "*th[ought]*" that returns of inventory was "more of a normalizing of rate[s] of sale" issue instead of a "cause of concern going forward"; and
- statements that "we're 'a little longer than we'd like to be today.'"

(Opp. at 22-23.) Apart from Plaintiffs' inability to dispute meaningfully that the majority of challenged statements are forward-looking opinions protected under the PSLRA's safe harbor (*infra* at 11-13), they ignore that throughout the Class Period, Canopy disclosed not only inventory amounts but amounts of products sold, differentiating between dry cannabis and extraction products. (Ex. C, Feb. 2019 MD&A at 22; Ex. H, June 2019 MD&A at 17, 25; Ex. K, Feb. 2020 MD&A at 21, 32; Ex. S, Aug. 2019 MD&A at 21.) Canopy also kept investors apprised of the state of the market, including regulatory developments, store openings and management's concerns and expectations. (Br. at 12-13.) *None* of the challenged statements supports Plaintiffs' allegation that Canopy told investors that "massive"

---

[6] Plaintiffs cite the statement that "this is not a stockpiling exercise at all" in three separate references and in all three fail to note that the statement was building upon an immediately preceding statement noting that "[t]he operations group constantly looking at supply-demand forecast" and was in response to an analyst's question regarding "preparation for the edible ingestible derivative market." (*Compare* Ex. W, Feb 2019 Tr. at 17-18 *with* Opp. at 13, 23, 35.)

and "actual" demand existed.[7]

Plaintiffs then are left to continue to push their discredited "no data" narrative and express disagreement with Canopy's judgments, arguing that it "had no data" to support its decisions notwithstanding binding authority holding that claims of mismanagement are non-actionable under the securities laws. *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 n.42 (3d Cir. 2009) (finding insufficient "[c]laims essentially grounded on corporate mismanagement"). Whether or not Plaintiffs believe that the data upon which Canopy relied was sufficient, Canopy indisputably disclosed to investors that the market was "brand new," that it had to "rely largely on [its] own market research and market demand which may not materialize," and that "trends in the adult-use cannabis market can only be forecast ahead of its anticipated legalization in the summer of 2018." (Br. at 8.) No investor would have reasonably believed that Canopy was relying on sales data from a cannabis market that had yet to exist. Further, Canopy disclosed that it relied on data from the "U.S. markets," "its own market research," and CIBC's predictions regarding the market size. (*Id.* at 24-25.)

---

[7] Plaintiffs' argument that Canopy made "no mention of branding" until the Class Period's end is inaccurate; Defendant Zekulin communicated to investors that "part of [the] effort to push product out early and obtain market share[] wasn't strictly for the purpose of obtaining market share, it was for getting [its] brands out there" during the *August 15, 2019* earnings call, and thus *during* the Class Period. (Br. at 25-26.)

Plaintiffs' dissatisfaction with Canopy's specific disclosures explaining precisely "the data it relied on" reveals the frailty of their argument. (Opp. at 30-31.)

### 2.    Canopy's Risk Disclosures Were Targeted and Comprehensive

Plaintiffs allege that "no timely, particularized risk disclosure ever put investors on notice of Canopy's oversupply of cannabis and cannabis facilities." (*Id.* at 24.) But Canopy's risk disclosures addressed specifically the issues about which Plaintiffs complain:

- Risks relating to "oversupply" (*Id.*): Canopy disclosed both the amounts of inventory, and the fact that "sales," and thus inventory, may "be impacted by many factors . . . including . . .the [type] of cannabis products… being purchased." (Ex. G, Nov. 2018 MD&A at 5.) The Company also disclosed that "[its] products may be subject to recalls" and that it "must rely largely on its own market research and market demand which may not materialize." (*Id.* at 33.)

- Risks relating to "cannabis facilities" (Opp. at 24): Canopy disclosed the risk of "adverse changes or developments affecting any facility," (*E.g.*, SAC ¶ 258.) Additionally, the Company identified statements regarding "inventory and production capacity expectations including discussions of plans or potential for expansion of capacity at existing or new facilities" as "forward-looking" statements based on management's "opinions" involving "known and unknown risks." (Ex. G, Nov. 2018 MD&A at 3.)

- Risks relating to "growing 'bud'-grade cannabis" (Opp. at 24): Canopy specifically disclosed that "cannabis growing operations are subject to risks inherent in an agricultural business." (Ex. G, Nov. 2018 MD&A at 33.)

These targeted risks were repeatedly disclosed, and such "risk-alerting" disclosures are sufficient to "insulate Defendants from liability" under Section 10(b). *In re Synchronoss*, 705 F. Supp. 2d 367, 411-12 (D.N.J. 2010).

### 3. Canopy Disclosed Its Production of Extraction Grade Cannabis in the Aldergrove and Delta Facilities

Plaintiffs allege that the Aldergrove and Delta facilities "could only produce low-quality cannabis." (Opp. at 26.) But Plaintiffs are unable to address effectively Canopy's explicit disclosures that Canopy intended these two facilities to grow extraction quality cannabis and that "[a]ll product" produced there was for extraction. (Br. at 10-11.) Plaintiffs instead offer merely the conclusion that "Defendants' claim is false" without supporting cites or even a discussion of these disclosures. (Opp. at 27.) It is not a "factual dispute" that dooms Plaintiffs' claims; it is a failure to meet its legally mandated pleading standard. (*Id.*)

Plaintiffs next argue that "Defendants stated that Aldergrove and Delta would produce high-quality cannabis," citing to SAC ¶ 59. (*Id.*) But neither SAC ¶ 59 nor any other paragraph in the SAC discuss purported statements offering assurances of "high-quality" cannabis grown at these facilities. Plaintiffs concede as much, offering that Canopy's disclosures "said nothing about the quality of the cannabis at Aldergrove and Delta, merely that cannabis was being used for extraction." (*Id.* at 28.) The law is clear that absent a specific and applicable duty to disclose, a claim for fraud by omission must plead facts that there was "an inaccurate, incomplete or misleading prior disclosure." *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000). Further, statements referring to Canopy being "the world's largest, most reliable and most diversified producer and seller of high

9

quality regulated cannabis" and owning "high-end" greenhouses are also non-actionable puffery. *See Realogy*, 2021 WL 211049, at *21.[8] (Opp. at 28.)

Similarly, Defendant Kovacevic's comment that the plants pictured on his public twitter post were "looking super-healthy," did not speak to the type of cannabis grown at Aldergrove, whether bud-grade or extract-grade. And it falls squarely within the types of statements courts deem "too vague to ascertain anything on which a reasonable investor might rely."[9] *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010). Of course, Defendant Kovacevic was commenting on pictures posted for all investors to see, who could form their own views as to the "health" of the plants.[10] (Br. at 51.)

---

[8] Plaintiffs take issue with Defendants' argument that issues relating to the quality of the plants, were "openly and often discussed." (Opp. at 50.) Plaintiffs assert that Defendants "misrepresent[ed] SAC ¶ 78." (*Id.*) Plaintiffs' disagreement is with their own pleading, not Defendants' argument. SAC ¶ 78 states: "FE3 states that the low quality of the plants grown at Aldergrove and Delta was openly and often discussed." But in any event, courts "do not require a defendant [to] 'provide the public with all material information,'" especially where, like here, Defendants made no representations as to the quality of the plants. *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 329 (3d Cir. 2007).

[9] Further, the fact that the facilities were described as "high-end," speaks not to the type or quality of cannabis cultivated and produced, but the technology utilized. (Opp. at 7.)

[10] Plaintiffs' argument that "[D]efendants assert a 'truth was on the market' defense" is meritless. (Opp. at 28.) Here, as in *Fan v. StoneMor Partners LP*, 927 F.3d 710, 716-17 (3d Cir. 2019), Defendants argue that the information available to the market demonstrates the complete absence of falsity. (Br. at 23.)

10

### B.       Canopy's Statements Are Otherwise Non-Actionable

### 1.       Many of the Challenged Statements Are Forward-Looking

Defendants identified over 18 statements concerning "management's expectation of market demands" that are protected by the PSLRA's safe harbor because they were plainly forecasts about future performance. (Br. at 27-29.) *See Realogy*, 2021 WL 211049, at \*15 ("Congress sought to 'enhance market efficiency by encouraging companies to disclose forward-looking information' to investors."). Plaintiffs' argument that the safe harbor is unavailable because some of Defendants' forecasts allegedly included "then-existing inventory" finds no support in the law. (Opp. at 34.) Projections based on present facts are still forward-looking when they forecast future performance and do not include separately addressed then-present facts. *See Realogy*, 2021 WL 211049, at \*16; *Nat'l Junior Baseball League v. PharmaNet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 533 (D.N.J. 2010) ("[W]hile Defendants' statements are based on underlying historical facts, the statements are nevertheless forward-looking.").[11]

Like in *Realogy*, here, statements that "[m]anagement continues to believe that significant demand will develop," that the Company "th[ought]" that returns of

---

[11] Statements that the company is "confident" or "feels happy" and "balanced" regarding inventory levels, also constitute immaterial, non-actionable "puffery." (Br. at 26-27.) Plaintiffs erroneously contend that whether the statements are puffery "is a fact-intensive inquiry" that cannot be answered now. (Opp. at 33.) To the contrary, the Third Circuit has held repeatedly that dismissal is appropriate on puffery grounds. *See In re Advanta Corp.*, 180 F.3d 525, 538 (3d Cir. 1999).

inventory were "more of a normalizing of rate[s] of sale" issue instead of a "cause of concern going forward," and "[it] wouldn't expect [product returns] to move the P&L in the future" (Opp. at 29, 36; Br. at 12), are forward-looking. *See Realogy*, 2021 WL 211049, at *15-16.[12]

Plaintiffs allege that Defendant Linton's statement that this "is not a stockpiling exercise at all, and we're constantly looking at [sic] as the provinces are turning up more stores, we need to fill that warehouse" (Opp. at 35) refers to "the explosion in facility capacity" and is a "then-current assessment of supply and demand." (*Id.*) But nowhere do the words "explosion" in "facility capacity" appear in Defendants' disclosures. Moreover, the comment was communicated in response to a question regarding "preparation for the edible ingestible derivative market" and discussed the Company's view on how it was preparing for related demand. (Ex. W, Feb. 2019 Tr. at 17.) Mr. Linton's view is far from a "then-current assessment of supply and demand." (Opp. at 35); *Realogy*, 2021 WL 211049, at *12. Plaintiffs also allege that Defendant Kovacevic stated that the "revenue reversal" was "not related to our production flow here." (Opp. at 23, 35.) Defendant Kovacevic never made that statement, and moreover, the statement was

---

[12] *In re Aetna* is not to the contrary. (Opp. at 36.) Plaintiffs fail to identify existing information at the time, contradicting Defendants' statements, *infra* at 14, and further, there, the Third Circuit "considered the allegations concerning defendants' state of mind and found the complaint failed to plead actual knowledge of the purported underpricing," as the Court should do here. *In re Aetna*, 617 F.3d at 285.

not referring to "revenue reversal." (*Id.*) Plaintiffs misattribute the speaker and ignore context. Defendant *Zekulin's* comment was wholly unrelated to revenue reversals. Responding to an analyst's question regarding sales and whether Canopy had "any issues with production in getting [oil and gelcap] products out the door," Zekulin replied that the Company had no issue with "the production flow" of these products and sales numbers were instead related to "the product mix that we see demand for." (SAC ¶ 278.) This statement is entirely consistent with Canopy's disclosures and the charge that Canopy had already announced.[13]

Further, Plaintiffs' arguments that Canopy had actual knowledge of the purported falsity of these forward-looking statements (Opp. at 36), must be rejected as insufficient. "Actual knowledge of inventory levels differs from actual knowledge that inventory levels would continue to impair [the company's] financial performance." *In re Newell*, 2020 WL 7040968, at *4. Because Plaintiffs fail to allege that "Defendants had information contrary to their statements, [they are] well short from pleading that any Defendant had specific 'actual knowledge' of these statements' falsity."[14] *Avaya, Inc.*, 564 F.3d at 259.

---

[13] Plaintiffs similarly take out of context Defendant Klein's May 29, 2020 comment made *after* the Class Period which says nothing about the veracity of the company's statements at the time of their making and does not speak to supply or inventory write-offs (or even referring specifically to the cannabis recreational market). (*Compare* Ex. U at 8 *with* Opp. at 4, 19.)

[14] Contrary to Plaintiffs' assertion, these forward-looking statements were accompanied by "meaningful cautionary language" or were sufficiently identified

### 2.   Canopy's Accounting Judgments Are Non-Actionable

### (a)   Canopy's Accounting Judgments Are Non-Actionable Opinion Statements

Plaintiffs offer no meaningful response to Defendants' argument that many of the challenged statements relating to Canopy's accounting judgments are non-actionable opinions under *Omnicare*.[15] (Br. at 30-33.) Specifically, Plaintiffs fail to demonstrate that Canopy did not hold these beliefs or that the supporting facts underlying them were "untrue" when made as required by *Omnicare*. *Omnicare, Inc.*, 575 U.S. at 186. Plaintiffs fail to point to any contemporaneous facts contradicting management's views regarding their "inherently subjective" inventory valuation.[16] *See In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *23 (D.N.J. Apr. 27, 2017) (an "estimation of an amount" is "inherently subjective" and so is "only actionable" if it is "not honestly believed

---

as such. (Br. at 28-29.) Moreover, Plaintiffs failure to identify any information contradicting Defendants' statements "provides a ground for dismiss[al] . . . that would apply even assuming defendants' cautionary language was inadequate." *Avaya, Inc.*, 564 F.3d at 259.

[15] Plaintiffs' attempt to evade *Omnicare* by implying it has no application to accounting statements is contradicted by numerous court decisions applying *Omnicare* in evaluating allegations regarding accounting statements. *See e.g.*, *In re Prudential Financial Inc. Sec. Litig.*, No. 19-cv-20839, 2020 WL 7706860, at *8 (D.N.J. Dec. 29, 2020).

[16] Plaintiffs fail to cite even to their own pleading to support their allegation that "evidence available at the time" demonstrated the falsity of Canopy's statements and instead cite to SAC ¶ 119 (Opp. at 38, n.184), which merely restates the principles governing IAS 2.

and lack[s] a reasonable basis"), *aff'd sub nom. In re Hertz Glob. Holdings Inc.*, 905 F.3d 106 (3d Cir. 2018). As the SAC admits, IAS 2 and IFRS 15 *required* Canopy to make "estimates" about its "expect[ations]" regarding the "likelihood" of future events[17] and Plaintiffs do not plausibly articulate any basis why those estimates were not honestly believed.

Plaintiffs once again rely on the purported "absence of actual market demand," alleging that Canopy had "no data" to support its accounting judgments. (Opp. at 38, 39.) But Plaintiffs distort Canopy's disclosures in order to fit their malformed allegations. In November 2019, Canopy disclosed that it had "little to no data" about customer preferences at the *start* of the Canadian legal recreational market one year prior, not "no data" throughout. (SAC ¶ 288.) And even at that point, Canopy disclosed that it "look[ed] at what U.S. markets had done" in order to formulate estimates of future demand. (Br. at 2-3.) That does not mean that Canopy's estimates were disbelieved when made or promulgated without a reasonable basis. *See In re Newell*, 2020 WL 7040968, at *4 ("The allegations must be sufficient to show that the challenged statements were 'actionably unsound *when made*.'") (emphasis added). The illogic of Plaintiffs' argument is revealed when one considers its policy implications—that no management could ever evaluate or form a view on demand without the backing of a well-developed

---

[17] (*See, e.g.*, SAC ¶¶ 119, 131, 134.)

15

market. The securities laws say no such thing.

Similarly, Plaintiffs' claim that Defendants did not "honestly believe" their accounting judgments because they "did not disclose" that Canopy considered the importance of brand building *in addition* to other factors in making strategic decisions about its inventory does nothing to bolster their allegations.[18] *Omnicare*'s holding "is fatal to Plaintiff[s'] theory." *Dempsey v. Vieau*, No. 13 CV 6883-LTS, 2016 WL 3351081, at *3 (S.D.N.Y. June 15, 2016). Canopy's alleged "failure to disclose every fact upon which its accounting judgments were based is not an actionable omission under *Omnicare*, so long as there was in fact an accounting judgment underlying the statement at issue," something that Plaintiffs here do not dispute. *Id*. Plaintiffs' "disagreement with the accounting conclusions in question," even "bolstered by a showing that there were 'some fact[s] cutting the other way,' is insufficient to plead an actionable omission under *Omnicare*." *Id*.

Plaintiffs' claim that the Company's accounting statements were not honestly believed and were not based on a reasonable basis because the Company announced subsequent revenue charges has been recently rejected by this Court. (Opp. at 41-42.) *See Prudential*, 2020 WL 7706860, at *9. Moreover, Plaintiffs' allegation the Company "did not adjust its inventory valuation accordingly" and

---

[18] If anything, Canopy's well-disclosed interest in developing a "strong brand recognition" (Br. at 26) shows that Canopy considered several factors in formulating a reasonable basis for its accounting judgments. (*Id.* at 25.)

16

"timely" (Opp. at 41-42), is not alleged in the SAC. *See Janowski*, 259 F. Supp. 3d at 120. This allegation is unsupported and inherently contradictory. Following the August 2019 charge, Canopy did "evaluate the net realizable value of its large inventory" and did "impair the inventory," as evidenced by the updated impairments in November 2019 and May 2020.[19] (Br. at 35-36.)

> **(b)    Canopy's Revenue Recognition Judgments Are Non-Actionable**

Plaintiffs are similarly unable to respond substantively to the argument that Canopy's revenue statements are non-actionable and compliant with IFRS 15. (*Id.* at 36-38.) Plaintiffs rehash their conclusory allegations that "[Defendants] knew" non-reversal was not "highly probable," purportedly because they failed to disclose the provinces' right of return and price concessions. (Opp. at 38.) These allegations are devoid of facts, suggesting Canopy knew at the time it was purportedly recognizing unreliable revenue, and are contradicted by Canopy's disclosures.[20]

---

[19] Plaintiffs' claim that in February 2019, Canopy "suddenly" stopped disclosing its cannabis inventory by category is misleading. (Opp. at 41-42.) The February 2019 disclosure reported on the 3Q2018 financial results, the first financial statements Canopy announced post legalization in October 2018. After legalization in October 2018, the Company began to differentiate between recreational and medical cannabis sold, further breaking down the results by type of cannabis (dry cannabis, oils and softgels). (Ex. C, Feb. 2019 MD&A at 22.)

[20] Plaintiffs claim that they need not plead the amount of overstated revenue with particularity because they are challenging "the failure to abide the 'not likely' standard of IFRS 15" and thus *Chubb* is inapposite. (Opp. at 41-42.) First, Plaintiffs allege there are "two methods for determining the amount of variable consideration" one of which is the "most likely"—not "not likely"—method. (SAC

17

*See In re Newell Brands*, 2020 WL 7040968, at \*4.

Plaintiffs ignore that Canopy repeatedly disclosed the possibility of product returns. (Br. at 38.) Plaintiffs' allegation that Canopy had a miscalculated belief in the amount of returns or sales prices, does not show that defendants' subjective assessment "was false or misleading at the time—in essence, that defendants did not believe in their own accounting judgments." *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 243 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016) ("Plaintiffs' after-the-fact theory of what constitutes a misleading statement [on revenue recognition] would require more of defendants than truthfulness. It would require infallibility.")

### C. Plaintiffs' FE Allegations Do Not Demonstrate that the Individual Defendants Were Aware of Specific Contradictory Information at the Time They Made an Alleged Misstatement

Plaintiffs' Opposition further reveals the deficiencies laden in their FE allegations. (Br. 39-48.) For instance, Plaintiffs repeat their claim that FE5 allegedly "confirm[ed]" that Canopy produced an oversupply of poor-quality cannabis "with no data." (Opp. at 45.) But Plaintiffs do not allege FE5 discussed this purported absence of "data" with Defendants or that these purported statements amount to anything more than FE5's own personal beliefs. *In re*

---

¶ 131, n.17.) Second, neither *Chubb* nor the SAC draws a distinction between the two. (*Id.*) *See California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 153 (3d Cir. 2004).

18

*Campbell*, 2020 WL 7022655, at \*8 & n.5 (discounting statements by FEs that merely offered their "opinions" and "disapproval" with the company's strategies). Plaintiffs allege that FE5 "worked closely with Defendant Kovacevic," but do not allege that FE5 had *any* conversation with him about these issues. *See Intelligroup*, 527 F. Supp. 2d at 360. Plaintiffs impermissibly argue for the first time in their Opposition that FE5 "directly" learned about Canopy's oversupply and quality issues "from Defendant Kovacevic." (Opp. at 47.) But there is no SAC allegation supporting Plaintiffs' assertion and the Opposition does not even attempt to supply context such as when these purported discussions occurred, a disabling omission given Canopy's disclosed charges and impairments to account for returns of slow-moving product and excess inventory. (*Supra* at 3-4.) Further, those unparticularized allegations fail to show any wrongdoing because Canopy disclosed issues with its inventory and took timely charges between August 2019 and May 2020. (*Infra* at 24.) Additionally, Plaintiffs admit that Canopy "said nothing about the quality of the cannabis" at Aldergrove and Delta and thus fail to allege that Canopy had a duty to disclose any information on the quality of cannabis grown at these facilities. (*Supra* at 9-10.)

Plaintiffs also allege that FE3 and FE4 "confirm that low-quality cannabis was overproduced in poor-quality facilities and that visits by Defendant Linton and other executives confirmed defendants' knowledge of same." (Opp. at 44-45.)

19

However, none of the purported statements attributed to FE3 discuss Defendant Linton's alleged "knowledge" of "overproduction" relative to expected demand. (SAC ¶¶ 86, 87.) FE3 also allegedly stated that at an unspecified time, Alan Cooke stated that the facilities were not producing "bud" grade cannabis, and that an *unnamed* "regional general manager" said that the cannabis was only going to be suitable for extraction. (Opp. at 45.) But these purported statements do not support an inference of wrongdoing, where Canopy had disclosed that these facilities were intended to primarily produce cannabis for extraction products and had "said nothing about the quality of the cannabis" grown at these facilities. (*Supra* at 9-10.) Further, the SAC does not claim that FE3 heard these purported statements himself. FE4 also purportedly stated that Mario Castillo (not a named defendant) visited "the British Columbia operations" and purportedly "told" unidentified "employees" (not FE4) that Canopy had excess inventory of oils and gelcaps. (SAC ¶ 99.) The SAC does not allege that FE4 was present during this visit, or when the visit took place, which facility Mario Castillo visited, or what he told the employees about the purported excess inventory. (Br. at 46.) Similarly, Plaintiffs allege that FE6 merely repeated comments that his boss "relayed" to him, not that he has any firsthand information. (SAC ¶ 106; Opp. at 45, 46.) *See Intelligroup*, 527 F. Supp. 2d at 361.

Notably, Plaintiffs do not address a fundamental flaw of their FE

20

allegations—that they do not allege any wrongdoing. For instance, Plaintiffs allege that FE1 "personally observed" a storage vault with inventory, and "witnessed" issues with the greenhouses, such as pest infestations and powdery mildew. (Opp. at 44.) But Plaintiffs do not dispute that Canopy timely and accurately disclosed its inventory supply and whether a storage vault looked like a "Walmart" or not, it contained the exact amount of inventory disclosed to investors. (*Supra* at 4-8.) Additionally, Canopy had no duty to disclose every operational issue it encountered, especially in light of its disclosures that its "growing operations are subject to risks inherent in an agricultural business."[21] (*Supra* at 8; Br. at 43-44.)

Plaintiffs also rehash that FE1 allegedly "participated in weekly meetings with Defendant Kovacevic" where issues of inventory and operational issues were allegedly "routinely discussed." (Opp. at 44.) But Plaintiffs do not explain why or how any such conversation demonstrates that Defendants possessed any information that contradicted their public statements. *See Chubb Corp.*, 394 F.3d at 157; *see also Prudential*, 2020 WL 7706860, at *11 (FE's report that the company knew earlier that "[it] would need to take a charge to income is completely unreliable" despite allegations that these issues were "discussed in forecast

---

[21] Plaintiffs erroneously claim that Canopy had a duty to disclose those issues because it "affirmatively misrepresented that actual demand justified inflated supply." (Opp. at 47, n.220.) Defendants made no representations regarding "actual demand" (*supra* at 5), and are under no duty to disclose every aspect of its operations. (Br. at 52.)

21

meetings."). Plaintiffs now allege that FE1 learned about issues of oversupply and poor facility conditions "directly from Defendant Kovacevic." (Opp. at 46.) This allegation is absent from the SAC which does not allege that FE1 had any "direct" conversations with Kovacevic.[22] But even if the Court were to consider this unpled claim, these purported discussions fail to show any wrongdoing. (*Supra* at 3-4.)

## II.    PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE CONSCIOUS MISBEHAVIOR OR RECKLESSNESS

Where, as here, Plaintiffs concede that they do not plead motive (Opp. at 49), the "strength of the circumstantial allegations [of recklessness or conscious misbehavior] must be correspondingly greater." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004). The Opposition confirms that Plaintiffs cannot meet this "greater" burden. Plaintiffs' conclusory allegations that Defendants "knew they were not scaling their inventory," and "must have been aware" of a purported lack of demand are insufficient to allege conscious misbehavior or recklessness.[23] *See id*; *Mueller*, 466 F. Supp. at 414.

---

[22] Further, the SAC does not allege any purported statements by FEs supporting Plaintiffs' claims regarding Canopy's accounting judgments. (Opp. at 39.) In fact, FE2 allegedly stated that Canopy kept "scrupulous records" of its inventory without disputing that those records were accurate. (SAC ¶ 70.) Plaintiffs' allegation that software provided information "of cannabis supply and demand" (Opp. at 44), is not faithful to the SAC. FE2 purportedly stated that Canopy's software "track[ed] inventory," but made no reference to market "demand."

[23] Plaintiffs allegation (raised for the first time in their Opposition) that Defendants made misstatements concerning "core matters" of central importance to the Company is insufficient to plead scienter. (Opp. at 52.) *See Martin v. GNC*

Pleading the opposite of "a mental state embracing intent to deceive, manipulate, or defraud," *Kid Brands, Inc.*, 736 F.3d at 242, Plaintiffs concede that issues purportedly referenced by FEs amount to nothing more than purported "mismanagement." (Opp. at 9.) But it is well established that mismanagement is not actionable under the securities laws. *Supra* at 7; *see Santa Fe Indus.*, 430 U.S. at 479; *In re Campbell*, 2020 WL 7022655, at *8.

Further, Plaintiffs allege "[t]hat a few people opined on the quality of some plants defendant Kovacevic photographed *prior to the Class Period*" does not mean that Defendants publicly discussed this matter. (Opp. at 50 (emphasis in the original).) First, the twitter posts clearly state that the pictures were taken on July 4 and 5, 2018. (Ex. Q, July 2018 Tweets.) Second, unlike Plaintiffs' Opposition, the SAC did not so easily discount twitter's public forum and the public users' responses, and in fact reproduced those responses verbatim. (SAC ¶¶ 89-93.) In any event, Plaintiffs cannot seriously dispute that twitter is a public forum.

Plaintiffs' purported FE statements also fail to bolster their scienter allegations. The allegation that FEs "met with, spoke with, and heard statements from individual defendants regarding oversupply," (Opp. at 50-51), is insufficient to provide a "cogent and compelling" inference of scienter. *In re Hertz*, 2017 WL 1536223, at *23. Here, like in *Hertz*, Canopy "discovered . . . problems" with its

---

*Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. Dec. 11, 2018).

inventory, "publicly disclosed those problems" through timely charges, and "updated the public every time it realized the problem was worse than previously disclosed" as shown by the iterative charges between August 2019 and May 2020. *See id*; *Mueller*, 466 F. Supp. 3d at 399 (rejecting claims that defendants knew that a charge was required earlier because FEs' statements did not demonstrate that Defendants "knew or believed that. . . those [financial] statements were inaccurate").[24] Prudent executives take time to understand complex situations and act accordingly. *See, e.g.*, *Slayton v Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 761 (7th Cir. 2007).

Further, this claim is unsupported by the SAC that does not allege that any of the FEs heard these statements directly from Defendants. (*Supra* at 3-4.) The FEs purport to discuss "visit[s]" and alleged statements by the Defendants, but do not contend that they were present during the visits or that they heard these purported discussions firsthand. *See Intelligroup*, 527 F. Supp. 2d at 361. Plaintiffs also fail to allege that that the FEs communicated information pertinent to Plaintiffs' allegations to the Defendants. *In re Newell*, 2020 WL 7040968 at *4.

---

[24] FE2's alleged personal belief that "it would have been virtually impossible for Canopy's executives to not know that there was surplus product" is insufficient to plead scienter. (SAC ¶ 70) *See In re Intelligroup*, 527 F. Supp. 2d at 361. Further, Canopy's independent auditor concluded that its annual financial statements were "in conformity with [IFRS]," which, as Plaintiffs' own cited case states, "is strongly probative of a lack of scienter." *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *20 (D.N.J. July 27, 2018); (Opp. at 42).

24

Finally, the fact that "Plaintiffs point to many statements . . . made during the [relevant] period as evidence that [defendants] had actual knowledge that [they] were false and misleading" is insufficient to plead scienter because they "cannot be connected directly to any misleading statement." *GSC Partners*, 368 F.3d at 239. (*See* Opp. at 51.) Moreover, Plaintiffs say nothing about Defendants' state of mind during the Class Period apart from Plaintiffs' distortion.[25] (Br. at 49-54.)

## III.   PLAINTIFFS' SECTION 20(a) CLAIMS SHOULD BE DISMISSED

Because Plaintiffs have not sufficiently alleged either a primary violation of Section 10(b) or that any individual defendant was a culpable participant in a primary violation, their control person claims should be dismissed. (Br. at 55.)

## IV.   THE REQUEST FOR LEAVE SHOULD BE DENIED

Finally, "because there is no indication" that allowing Plaintiffs to amend "would cure any of the deficiencies in the [SAC], and Plaintiff[s] ha[ve] not proffered any information to the contrary, leave to further amend" should not be granted. *Realogy*, 2021 WL 211049, at *21; *Prudential*, 2020 WL 7706860, at *15.

### **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss the "Second" Amended Complaint with prejudice.

---

[25] *Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *5 (D.N.J. June 12, 2020) is inapposite. There, this Court found that defendant controlled the company like a family business, was the only significant shareholder, and because of improper trading, the company was delisted. None of those facts exist here.

Dated: February 8, 2021

*Respectfully submitted*,

s/ Andrew Muscato
Andrew Muscato
Jay B. Kasner (*pro hac vice*)
Susan L. Saltzstein (*pro hac vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000 (telephone)
(212) 735-2000 (fax)
andrew.muscato@skadden.com
jay.kasner@skadden.com
susan.saltzstein@skadden.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Reply Memorandum Of Law In Further Support Of Defendants' Motion To Dismiss The "Second" Amended Complaint was filed electronically with the United States District Court for the District of New Jersey through the Court's ECF System on this date. The Notice of Electronic Filing constitutes service on all parties under Rule 14(b)(1) of this Court's ECF Policies and Procedures listed in Local Civil Rule 5.2.

Dated: February 8, 2021

s/ Andrew Muscato
Andrew Muscato