## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDUARDO ORTIZ, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>CANOPY GROWTH CORPORATION, BRUCE LINTON, MARK ZEKULIN, MIKE LEE, TIM SAUNDERS, DAVID KLEIN, and RADE KOVACEVIC,<br><br>              Defendants. | Case No.: 2:19-cv-20543-KM-ESK |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

**Page(s)**

I.     PRELIMINARY STATEMENT ...........................................................1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT .......................5

    A.     Procedural History of the Litigation .....................................5

    B.     Summary of Key Terms of the Proposed Settlement...........................7

        1.     Relief to Class Members and Release of Claims.......................7

        2.     Class Notice and Settlement Administration ...........................7

            a)     Notice.............................................................7

            b)     Administration ...................................................9

        3.     Papers in Support of the Settlement, Award of
            Lead Counsel Fees and Expenses, and Plaintiffs'
            Compensatory Award ...........................................9

        4.     Objections ..........................................................10

        5.     Opt-Outs ...........................................................10

        6.     Termination of the Settlement .................................11

        7.     No Admission of Liability ......................................11

III.   THE COURT SHOULD PRELIMINARILY
APPROVE THE SETTLEMENT........................................................11

    A.     Third Circuit Standards Favor Preliminary Approval.......................11

    B.     Plaintiffs and Their Counsel Have Zealously Represented
        the Class (Rule 23(e)(2)(A)) ..............................................13

    C.     The Settlement Is the Result of Good Faith, Arm's-Length
        Negotiations (Rule 23(e)(2)(B)).........................................15

    D.     The Settlement Provides Fair, Reasonable and Adequate
        Relief to the Class (Rule 23(e)(2)(C))..................................17

        1.     The *Girsh* factors demonstrate that the costs, risks, and delay
            of trial favor approval (Rule 23I(2)(C)(i))..............................17

            a)     Complexity, length, and duration
               of the litigation. ...................................................17

            b)     Reaction of the class to the settlement ................20

c) Stage of the proceedings ......................................20

d) Risk of establishing liability and damages...........20

e) Risk of maintaining a certified class through trial ........................................................22

f) Ability of defendant to withstand a greater judgment................................................23

g) Range of reasonableness of the Settlement in light of the best possible recovery and all attendant risks of litigation.............................23

2. The proposed method of distributing relief to Settlement Class Members is effective and equitable (Rule 23(e)(2)(C)(ii)) .................................................24

3. The terms of any proposed award of attorneys' fees are disclosed and reasonable (Rule 23(e)(2)(C)(iii)) ...............25

4. The parties have entered into a side agreement which has been disclosed and is also fair, reasonable, and adequate (Rule 23(e)(2)(C)(iv))....................................25

IV. THE COURT SHOULD PRELIMINARILY CERTIFY A CLASS IN ORDER TO PROVIDE NOTICE TO CLASS MEMBERS ...........26

A. Numerosity ...........................................................................27

B. Commonality ........................................................................28

C. Adequacy...............................................................................30

1. Adequacy of proposed Class Representatives .........................30

2. Adequacy of proposed Class Counsel ......................................31

3. Predominance and Superiority.................................................32

V. THE PROPOSED NOTICE PLAN SATISFIES RULE 23(C)(2)(B) ..........34

VI. CONCLUSION................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151
  (3d Cir. 2014)......................................................................................15

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................26, 30, 32

*Bing Li v. Aeterna Zentaris, Inc.*,
  324 F.R.D. 331 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v.
  Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019)....................28

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011)...........................................16

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .........................................................11, 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................................37

*Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  No, 2:13-cv-6272-MCA0MAH, 2016 WL 7209649 (D.N.J. Oct.
  13, 2016) .............................................................................................36

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ......................................................*passim*

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)......................................26

*Huffman v. Prudential Ins. Co. of America*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019).........................................19

*Hull v. Global Digital Solutions, Inc., et al.*,
  Case No. 16-cv-5153, ECF No. 65 ......................................................34

iii

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................36

*In re Akers Biosciences, Inc., Securities Litigation*,
   Case No. 18-cv-10521, ECF No. 40 .................................................34

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..............................................21

*In re Celgene Corp. Sec. Litig.*,
   2020 WL 8870665 (D.N.J. Nov. 29, 2020) ...............................27, 30

*In re CIGNA Corp.*,
   2007 WL 2071898 (E.D. Pa. Jul. 13, 2007) ...............................16, 22

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................24

*In re DVI, Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008), *aff'd,* 639 F.3d 623 (3d Cir. 2011)................28

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................29

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)........................................................22

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)..............................................................18

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012).....................................................14

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004)....................................................21

*In re NFL Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014) .................................................12, 15, 26

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) .................................................22, 23, 29

*In re: Ocean Power Techs., Inc., Sec. Litig.*,
2016 WL 7638464 (D.N.J. June 7, 2016)..........................................................24

*In re Petrobras Sec. Litig.*,
No. 14-CV-9662 (JSR), 2018 WL 4521211 (S.D.N.Y. Sept. 21,
2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) ....................................................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ...............................................................................37

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2008 WL 9447623 (D.N.J. Dec. 9, 2008)...........................................................17

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ...............................................................................30

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26. 2010) .........................................................14

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...................................................15, 22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...............................................................................14

*Jones v. Commerce Bancorp, Inc.*,
No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007)....................12, 15

*Louisiana Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee
Roasters, Inc.*,
2017 WL 3149424 (D. Vt. July 21, 2017)...........................................................29

*Milliron v. T-Mobile USA, Inc.*,
2009 WL 3345762 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14,
2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) ..................................................25

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)............................................................................................35

*Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ..........................................................22

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)..................................................................33

*Pope v. Navient Corp.,*
    2021 WL 926611 (D.N.J. Mar. 11, 2021) ....................................28, 30

*Sanders v. CJS Sols. Grp., LLC,*
    2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ....................................16

*Schuler v. Medicines Co.,*
    2016 WL 3457218 (D.N.J. June 24, 2016)....................................14, 15

*Shapiro v. All. MMA, Inc.,*
    2018 WL 3158812 (D.N.J. June 28, 2018)........................................31

*Singleton v. First Student Mgmt. LLC,*
    2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..........................................17

*Steele v. Welch,*
    2005 WL 3801469 (E.D. Pa. May 20, 2005).....................................16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)....................................................................28

*Weisfeld v. Sun Chem. Corp.,*
    210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir.
    2004) ......................................................................................32

*Whiteley v. Zynerba Pharms., Inc.,*
    2021 WL 4206696 (E.D. Pa. Sept. 16, 2021).....................................25

*Yaeger v. Subaru of Am., Inc.,*
    2016 U.S. Dist. LEXIS 117193 (D.N.J. Aug. 31, 2016) ....................20

**Statutes**

15 U.S.C. §78u-4.................................................................5, 36, 37

28 U.S.C. § 1775 ....................................................................9

Exchange Act Sections 10(b) and 20(a) ......................................5

**Rules**

Fed. R. Civ. P. 23 .................................................................................*passim*

Rule 10b-5 ...............................................................................................5

Rule 23's .................................................................................................*passim*

Rule 23I(2)(C)(i) ...................................................................................17

Co-Lead Plaintiffs Anthony Sultan, Ellaine Sultan, Anna Cooley, Formica Industries Limited, David Pendola and Dean K. Lurie (collectively, "Plaintiffs"), through Plaintiffs' Counsel, on behalf of themselves and the Settlement Class, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated February 4, 2022 ("Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a Settlement Fairness Hearing ("Final Approval Hearing") and deadlines for the mailing and publication of the Notice, for Settlement Class Member objections and Settlement Class Member opt-out notices, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved a very favorable resolution of this Litigation. Although this Court has previously dismissed all of Plaintiffs' claims against Defendants, the proposed Settlement will resolve all claims against Defendants in

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Brian Calandra ("Calandra Declaration"), which is filed concurrently herewith.

exchange for a sizable cash payment of $13,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.

This securities class action arises out of allegedly false and misleading statements and omissions by Defendants, including an alleged (i) failure to disclose an oversupply of cannabis extract inventory created only because its purportedly state-of-the-art facilities produced just low-quality cannabis that could not be sold in any other form, and not in response to any expectation of demand, which also constituted a material risk to Canopy Growth Corporation ("Canopy" or "Company"); (ii) failure to impair Canopy's inventory to account for the overproduction of extract products; and (iii) failure to disclose that customers had an absolute right of return and the ability to extract substantial price concessions. Plaintiffs allege that as the truth was revealed through a series of public disclosures, the price of Canopy's stock fell substantially, causing significant economic harm to Plaintiffs and the Class.

By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Defendant Canopy's filings with the U.S. Securities and Exchange Commission ("SEC"), public reports concerning

Canopy, and transcripts of Canopy's investor calls; interviews with several former employees and other potential witnesses with relevant information; and consultation with damages and accounting experts; (ii) drafted each of: the Amended Class Action Complaint ("AC"), Second Amended Class Action Complaint ("SAC"), and Third Amended Class Action Complaint ("TAC"), to address the deficiencies in the SAC identified by the Court when it granted Defendants' motion to dismiss the SAC; (iii) briefed Defendants' motions to dismiss the SAC and TAC; (iv) drafted and exchanged extensive mediation statements; (vi) participated in a full-day mediation session before mediator Jed D. Melnick of JAMS and several post-mediation discussions through the mediator; and (vii) engaged in negotiations regarding the terms of the proposed Settlement. The Settlement is the result of arm's-length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator.

Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement. Pursuant to the terms of the Stipulation and Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B)(v), all members of the Class will have an opportunity to opt out or object.

At this first stage of the settlement approval process, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e). As set forth below, the Settlement easily satisfies the relevant standard

because it is a fair, reasonable, and adequate resolution for the Class. In particular, the Settlement balances the objective of securing the highest possible recovery for the Class while recognizing the substantial risks and costs of continued litigation, and the risk that, as in any complex case, the Class could receive nothing, particularly given that the Court has once already dismissed Plaintiff's claims in full, or a sum far less than the Settlement Amount, after a trial and any lengthy appeals are completed. Accordingly, Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class and represents a highly favorable result reached as a result of Counsel's best efforts.

In addition, pursuant to the Stipulation, each Class Member will be treated equitably because each Class Member that properly submits a valid Proof of Claim form will receive a pro rata share of the monetary relief based on the terms of the Plan of Allocation. For all of these reasons, the proposed Settlement satisfies the standards for preliminary approval.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Final Approval Hearing and other Settlement-related dates may be scheduled. At the Final Approval Hearing, the Court will make a final determination as to (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; and (iii) a proposed award of attorneys' fees and expenses and a proposed amount to be awarded to Plaintiffs,

pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation and work on behalf of the Class.

As discussed in greater detail below, the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Class.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History of the Litigation

On November 20, 2019, Plaintiff Eduardo Ortiz commenced this action alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 thereunder. Dkt. No. 1. On January 21, 2020, Anthony Sultan, Ellaine Sultan, Anna Cooley, and Formica Industries Limited (together, "Sultan Group") filed a motion seeking appointment as Lead Plaintiffs, and on the same day David Pendola and Dean Lurie also filed a motion seeking appointment as Lead Plaintiffs. Dkt. Nos. 7–8. On February 10, 2020, the Court so-ordered a stipulation filed by the Sultan Group, Pendola, and Lurie appointing them Lead Plaintiffs and approving their selection of Pomerantz LLP ("Pomerantz"), The Rosen Law Firm, P.A. ("Rosen"), and Hagens Berman Sobol Shapiro LLP ("Hagens") as Lead Counsel. Dkt. No. 27.

Plaintiffs filed their First Amended Complaint on June 4, 2020 (Dkt. No. 52), and on August 4, 2020, Defendants moved to dismiss (Dkt. No. 55). Plaintiffs obtained leave to file a Second Amended Complaint on October 9, 2020 (*see* Dkt. No. 66) and filed their Second Amended Complaint the same day (Dkt. No. 65).

Defendants moved to dismiss the Second Amended Complaint on November 23, 2020 (Dkt. No. 67), and on May 7, 2021, the Court granted Defendants' motion without prejudice and permitted Plaintiffs to file a Third Amended Complaint (Dkt. No. 73). Plaintiffs filed their Third Amended Complaint on June 14, 2021 (Dkt. No 77). Defendants moved to dismiss the Third Amended Complaint on August 16, 2021 (Dkt. No. 80) and Plaintiffs filed their opposition to that Motion on October 12, 2021 (Dkt. No. 83).

On October 19, 2021, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Jed D. Melnick of JAMS ("Melnick"). In advance of that session, the Settling Parties prepared and exchanged detailed mediation statements. The session ended without an agreement. Settlement negotiations between the parties continued through mediator Melnick in the weeks that followed. On November 19, 2021, the Settling Parties agreed in principle to resolve the claims asserted in this Litigation for $13 million in return for a release of all claims against Defendants, as further detailed below. On December 14, 2021, the Settling Parties executed a Memorandum of Understanding setting forth the terms of the agreement in principle ("MOU").

## B. Summary of Key Terms of the Proposed Settlement

### 1. Relief to Class Members and Release of Claims

Defendants have agreed to settle the Litigation for $13,000,000, as described more fully in the Stipulation, in return for which all claims that have been, or could have been, asserted in the Complaints against Defendants and Released Persons will be dismissed, barred, and released.

The monies will be deposited in an escrow account maintained by the Escrow Agent and will be held in instruments or accounts backed by the Full Faith & Credit of the United States Government. If the Settlement is approved, none of the monies will revert to Canopy or its insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies, other than notice and administrative expenses already incurred, will revert.

### 2. Class Notice and Settlement Administration

#### a) Notice

Within 21 days of Preliminary Approval, a proposed Postcard Notice, substantially in the form set forth in Exhibit A-4 to the Stipulation, will be mailed to each Settlement Class Member identified by records maintained by Canopy's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. The Postcard Notice will direct Class Members to the website maintained by the Claims Administrator, www.strategicclaims.net/CanopyGrowth/, where each can find the Stipulation and

its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim and Release Form, containing directions on how to complete and submit Proof of Claims forms electronically, as well as directions on how to request that a Proof of Claim form and related documents, including the Long Form Notice, are mailed to the Class Member. A Summary Notice will also be published through the Internet, since that medium is most frequently accessed by investors, and is the most cost-effective.

The Postcard Notice describes in plain English the terms of the Settlement. The documents found at www.strategicclaims.net/CanopyGrowth/ document the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, and the maximum attorneys' fees award and expense reimbursement and proposed compensatory awards that may be sought.

The Postcard Notice also sets forth the date of the Final Approval Hearing, and deadlines for filing a Proof of Claim, which Lead Counsel requests be postmarked no later than 7 days after the Final Approval Hearing, and for  objecting to or opting out of the Settlement. The documents found at www.strategicclaims.net contained detailed instructions for filing a Proof of Claim form, and for objecting to or opting out of the Settlement. It is respectfully requested that the Final Approval Hearing be scheduled no earlier than 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 21 days; Class Members to have ample time to consider their options and, if they choose, to file

objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; and time for the parties to respond to such objections.

### b) Administration

After provision of a competitive bidding process, Lead Counsel selected Strategic Claims Services ("Claims Administrator") to administer the notice and process the claims for the Settlement. The Claims Administrator is well known and highly experienced in the administration of securities fraud class action settlements.

### 3. Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Award

No later than 35 days prior to the Final Approval Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiffs' compensatory award. Those papers will explain why the Settlement should be approved, as well as Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days prior to the Final Approval Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses and request for a compensatory award to Plaintiffs.

### 4.  Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so 21 days prior to the Hearing, and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Any Settlement Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To insure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in Canopy Securities, as well as submit to the jurisdiction of this court for possible deposition. *See In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at *4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019) (sanctioning objector).[2]

### 5.  Opt-Outs

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Canopy transaction documentation, postmarked no later than 21 days prior to the Final Approval Hearing. The opt-out must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

---

[2] In all case citations, internal quotations and citations are omitted unless otherwise indicated.

### 6.  Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of Canopy Securities elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 7.  No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability or wrongdoing and continue to deny that they engaged in any misconduct or violated the law.

## III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A. Third Circuit Standards Favor Preliminary Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal

courts." *Id*. This is particularly true for class actions involving complex litigation and securities matters. *See* 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more.").

Settlement of this class action requires the Court's approval. *See* Fed. R. Civ. P. 23(e). Courts usually conduct a preliminary assessment of the settlement before directing notice, a practice the Third Circuit endorses. *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 582–84 (3d Cir. 2014) (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23.

## B. Plaintiffs and Their Counsel Have Zealously Represented the Class (Rule 23(e)(2)(A))

Plaintiffs and Co-Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Litigation on behalf of the Class, including, among other things, expansive review of Canopy's financial filings, earnings calls, analyst reports, and other industry reports, retaining multiple investigators to interview former Canopy employees with knowledge of facts relevant to Plaintiffs' claims, drafting and filing three amended complaints, opposing two motions to dismiss filed by Defendants, and engaging in extensive settlement negotiations and mediation led by Melnick.

Here, the proposed Settlement is fair, as it was the result of extensive arm's-length negotiations by experienced counsel, overseen by a highly respected securities litigation mediator, and the Settling Parties had a full understanding of the

merits of the case. *See, e.g.*, *Schuler v. Medicines Co.*, 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of counsel's investigation); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 483 (D.N.J. 2012) (approving settlement before discovery after arm's-length mediation).

Accordingly, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26. 2010). As detailed in Section II *supra*, given the extensive investigation, multiple briefings of motions to dismiss, and this Court's granting of Defendants' motion to dismiss the Second Amended Complaint, by the time of Settlement, Lead Counsel knew what important evidence needed to be gathered and what hurdles would need to be overcome to successfully litigate the action. All of this, combined with Lead Counsel's extensive litigation experience, including extensive experience in securities fraud cases, was more than sufficient to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *Johnson & Johnson*, 900 F. Supp. 2d at 482 ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties . . . . Indeed, courts in this district have approved settlements while the case

was in the pre-trial stage and formal discovery had not yet commenced"); *see also Schuler*, 2016 WL 3457218, at *7.

Bringing this experience and knowledge to bear, Lead Counsel reached the informed conclusion that the Settlement is in the best interests of the Class. Courts recognize that counsel's judgment is entitled to considerable weight in this context. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

### C. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations (Rule 23(e)(2)(B))

Courts apply an initial presumption of fairness if the proposed settlement was reached through "arm's length negotiation." *Jones*, 2007 WL 2085357, at *2; *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) ("[W]hen the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement.'"); *NFL*, 307 F.R.D. at 387 ("[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel."), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

Here, negotiations began after Lead Counsel filed its motion to dismiss Plaintiffs' Third Amended Complaint and Plaintiffs filed their opposition to that

motion. The parties and counsel were fully aware of the strengths and weaknesses of Plaintiffs' claims. The parties attended an all-day virtual mediation session before mediator Jed Melnick on October 19, 2021. The mediation was substantive and adversarial, and Defendants were represented by highly sophisticated counsel. After the mediation ended without a settlement, Melnick maintained contact with the parties, engaging counsel through several arms-length, substantive negotiations, and on November 19, 2021, the parties agreed to a settlement of $13.0 million.

The mediator's direct participation further ensures that negotiations were non-collusive and conducted at arm's-length. *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. Jul. 13, 2007) (approving settlement where it was "clear that negotiations for the settlement occurred at arm's length, as the parties were assisted" by a mediator); *Steele v. Welch*, 2005 WL 3801469, at *1 (E.D. Pa. May 20, 2005) (same); *see also Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

### D. The Settlement Provides Fair, Reasonable and Adequate Relief to the Class (Rule 23(e)(2)(C))

#### 1. The *Girsh* factors demonstrate that the costs, risks, and delay of trial favor approval (Rule 23I(2)(C)(i))

When determining whether to grant final approval of class action settlements, courts in this Circuit consider the *Girsh* factors: "(1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The *Girsh* final approval factors guide a court's preliminary assessments of class action settlements. *Id.*

#### a) Complexity, length, and duration of the litigation.

The complexity, expense, and likely duration of the litigation supports approval of the Settlement. "Federal securities class actions by definition involve complicated issues of law and fact." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008). Securities class actions are notoriously complex and expensive to litigate because they require extensive

17

investigations, discovery, and the retention of experts to opine on several topics such as market efficiency, loss causation, and damages.

This case was filed over two years ago, and undoubtedly faces many risks to obtain ultimate resolution. For example, Plaintiffs have yet to defeat a motion to dismiss, and this Court has already granted one motion to dismiss on the grounds that Plaintiffs failed to allege scienter. In addition, even if the Court were to sustain Plaintiffs' Third Amended Complaint, Plaintiffs' claims would still need to survive summary judgment and trial, and the inevitable appeals would significantly lengthen the time until any Class Member received recovery. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

The recovery is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval). For example, Defendants have maintained that their statements with respect to Canopy's inventory supply and

cannabis production capabilities were not false and misleading because Canopy disclosed the facts alleged to be concealed, and/or the misstatements are inactionable forward-looking statements, opinions, or puffery. *See, e.g.*, ECF No. 67-1 at 15–43. Defendants have also argued that, even if their statements were false or misleading, the element of scienter has not been met. *See, e.g.*, ECF No. 67-1 at 48–55; ECF No. 80-1 at 16–39.

Taking into account nearly four years of litigation, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the Settlement here is certainly reasonable and should be preliminarily approved. See *Girsh*, 521 F.2d at 157. Indeed, given the complexity of this case, the sophisticated Defendants involved, and the uncertain delay of continued litigation, the $13,000,000.00 Settlement is an outstanding result. When analyzing the risks of establishing liability and damages at trial, the court should "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action." *Huffman v. Prudential Ins. Co. of America*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019). As such, the Court should find that the relief provided under the Settlement is adequate, given the complexity of the case and the risks.

### b)  Reaction of the class to the settlement

Because notice has not issued, the second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.

### c)  Stage of the proceedings

This Action has progressed to the stage where Plaintiffs are thoroughly aware of the strengths and weaknesses of their claims. Plaintiffs investigated the underlying claims, drafted multiple amended complaints, including a viable amended complaint, have briefed oppositions to two motions to dismiss by Defendants, and consulted with experts. Thus, although discovery was not completed, "class counsel were sufficiently well prepared and informed enough to engage in robust settlement negotiations," which is all the third *Girsh* factor requires. *Yaeger v. Subaru of Am., Inc.*, 2016 U.S. Dist. LEXIS 117193, at *28 (D.N.J. Aug. 31, 2016).

### d)  Risk of establishing liability and damages

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Id.* at *29 (quotation omitted). Here, there were substantial risks to proving both liability and damages which, if litigated, threatened to deprive the Class of any recovery.

Specifically, Defendants have strong arguments regarding scienter, which might be accepted by the Court (as it was in the Court's prior ruling) in ruling on Defendants' pending motion to dismiss, depriving the Class of any recovery. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (finding settlement reasonable, in part, because proving scienter "would have been very difficult").

Further, with respect to loss causation and damages, although Defendants did not assert that Plaintiffs failed to allege a link between the alleged misconduct and Canopy's stock price declines on the relevant disclosure dates, at summary judgment and trial, Defendants' experts would have argued against loss causation and damages with respect to each of the disclosure dates at issue, in an effort to truncate the Class Period or eliminate it altogether. Plaintiffs' experts would have defended their own conclusions with respect to loss causation and damages as to each of those dates with equal vigor. Each expert's testimony would have relied on complex and highly technical economic arguments.

Given that the testimony of the parties' experts on loss causation and damages would vary substantially, these crucial elements would have been resolved at trial, in large part, through a "battle of experts." *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001). Such a battle increases the expense as well as the risk of advancing the Litigation toward a positive resolution for

Plaintiffs and the Class. Plaintiffs believe their case is strong but acknowledge, as they must, that there are risks to litigation and ultimate recovery. *See Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *6 (D.N.J. July 29, 2013) (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict."). Thus, the Settlement provides a guaranteed result without protracted delay and without the risk of receiving no recovery at all.

### e) Risk of maintaining a certified class through trial

The Third Circuit instructs that the sixth *Girsh* factor warrants "only minimal consideration." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016). To the extent it matters, this factor also favors approval. Defendants have reserved the right to oppose class certification in the absence of a settlement, and

Plaintiffs expect that they would do so by, among other things, challenging market efficiency and attempting to prove the absence of price impact. There could be no assurance that class certification would be granted, or that a certified class could be maintained through trial.

### f) Ability of defendant to withstand a greater judgment

This *Girsh* factor is neutral because Plaintiffs did not consider any "financial instability as justification for the settlement's size." *See id.* As the Third Circuit has noted, "'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the . . . settlement." *Id.* (quotation and citation omitted).

### g) Range of reasonableness of the Settlement in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Girsh* factors ask whether the settlement represents a good value for a weak case or a poor value for a strong case. *Id.*, 821 F.3d at 440 (quotation and citation omitted). These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* When assessing the eighth and ninth *Girsh* factors, courts "must take seriously the litigation risks inherent in pressing forward with the case." *Id.*

Here, the eighth and ninth *Girsh* factors favor approval. As set forth above, the guaranteed recovery of $13 million is a significant win for the class given that Plaintiffs' Second Amended Complaint was dismissed and Defendants' motion to dismiss Plaintiffs' Third Amended Complaint is pending.

### 2. The proposed method of distributing relief to Settlement Class Members is effective and equitable (Rule 23(e)(2)(C)(ii))

As discussed in Section IV below, the Settlement calls for all Class Members to be effectively apprised of the Settlement, the reasons therefore, and the risks and potential benefits of continued litigation. The Long Notice also informs Class Members how the net proceeds of the Settlement will be equitably and effectively distributed among Class Members who opt to participate in the Settlement by returning a valid claim form. *See* Exhibit A-1 at 12–16.

A plan of allocation will be approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiffs or any other Class Member preferentially. *See In re: Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 7638464, at *1 (D.N.J. June 7, 2016). The Plan, set out in the Long Notice, attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Class Member will receive a *pro rata* share equal to all other

Class Members who bought and sold at the same time. Plaintiffs and all other Class Members will receive their payment pursuant to the same formula.

### 3. The terms of any proposed award of attorneys' fees are disclosed and reasonable (Rule 23(e)(2)(C)(iii))

Plaintiffs have disclosed that they intend to seek attorneys' fees of no more than 33 1/3%, or one-third, of the Settlement amount, *see* Exhibit A-1 at 2, which is typical for similar securities fraud litigations. *See, e.g., Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at \*12 (E.D. Pa. Sept. 16, 2021) ("While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund."); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at \*15 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (awarding 33% of $13.5 million settlement).

### 4. The parties have entered into a side agreement which has been disclosed and is also fair, reasonable, and adequate (Rule 23(e)(2)(C)(iv))

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. As is standard in securities fraud class action settlements, the Parties have a supplemental agreement that provides Canopy with the option to terminate the settlement if the number of Canopy shares represented by Class Members who opt out of the Settlement equals or exceeds a certain threshold. Stipulation ¶ 8.3. As is also

standard practice, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating an incentive for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. "The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair." *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY A CLASS IN ORDER TO PROVIDE NOTICE TO CLASS MEMBERS

This Court should preliminarily certify the proposed Class for the purposes of the Settlement. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court need not, at this point, conduct a rigorous analysis to make a preliminary determination whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *In re NFL Players Concussion Injury Litig.*, 775 F.3d at 586. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, requiring that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Action readily meets Rule 23's requirements.

## A. Numerosity

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). While there is no mandatory minimum, "the Third Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'" *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *4 (D.N.J. Nov. 29, 2020) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Courts in this Circuit "have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally

traded security." *Pope v. Navient Corp.*, 2021 WL 926611, at *6 (D.N.J. Mar. 11, 2021).

Here, the Class far exceeds forty members. During the Class Period, Canopy common stock was listed on the NYSE, the average weekly trading volume for Canopy common stock was over 5 million shares, and Canopy told the SEC that as of May 28, 2020, there were 369,939,400 common shares of the Company outstanding. *See Canopy* Form 10-K for the fiscal year ended March 31, 2020, filed on June 1, 2020, at 1. Therefore, Rule 23(a)(1) is satisfied.

### B. Commonality

Commonality is met where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). And "courts in this [C]ircuit . . . have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018), *aff'd sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019); *see also In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008), *aff'd,* 639 F.3d 623 (3d Cir. 2011) ("Courts in this Circuit also have recognized that securities fraud cases often present

a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (remarking that in a securities class action the commonality requirement "is applied permissively").

As in most securities class actions, the dispute in this Action focused on common issues relating to alleged violations of federal securities laws, misrepresentations and omissions of material fact made to the market as a whole, and scienter. *Louisiana Mun. Police Emps. Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3149424, at *5 (D. Vt. July 21, 2017). All Class members were injured because of common misrepresentations and omissions, and all assert the same legal claims. Commonality is easily satisfied.

## A. Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Third Circuit has "set a 'low threshold' for typicality" so that "'[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct.'" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428.

Plaintiffs' claims here are typical because both Plaintiffs and Class Members were injured by the same common course of conduct by Defendants—misrepresentations and omissions regarding Canopy's cannabis inventory—and all assert violations of the same statutes based upon the same nucleus of facts. *See Pope*, 2021 WL 926611, at *7 (finding typicality "easily satisfied" where, like here, "Lead Plaintiff is asserting the same claims—both in terms of the legal theory advanced and the factual circumstances underlying the theory—as the class."); *see also Celgene*, 2020 WL 8870665, at *4. Nor is any Plaintiff "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009). Thus, Plaintiffs stand in precisely the same position as absent Class members.

### C. Adequacy

"Determining adequacy involves a two-part inquiry: (1) 'the named plaintiff's interests must be sufficiently aligned with the interests of the absentees;' and (2) 'the plaintiff's counsel must be qualified to represent the class.'" *Pope*, 2021 WL 926611, at *7. Both elements are easily satisfied here.

### 1. Adequacy of proposed Class Representatives

As discussed above, both Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members," *Amchem*, 521 U.S. at 594–95, and have no

conflicts with absent Class members. Moreover, Plaintiffs have proved their adequacy by zealously advancing the Class's interests. Plaintiffs have vigorously opposed multiple motions to dismiss from Defendants and negotiated this favorable Settlement that will bring immediate, certain recovery to the Class.

### 2. Adequacy of proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *5 (D.N.J. June 28, 2018).

Each of Pomerantz, Rosen, and Hagens has routinely served as lead counsel in securities class actions in federal courts across the country and have each won substantial recoveries for classes represented by their firms in other securities class actions and complex litigation. *See* ECF Nos. 7-2 (Hagens) 8-8 (Pomerantz), 8-9 (Rosen); *see also* Calandra Decl. Ex. 2. Moreover, these firms are very familiar with the applicable legal issues, and have devoted considerable resources to advancing the Class's interests. Accordingly, the adequacy requirement is met.

### 3. Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Plaintiffs seek to certify a settlement class under Rule 23(b)(3). *Id.* That Rule is satisfied where a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* This Action satisfies both the predominance and superiority criteria of Rule 23(b)(3).

Class certification is appropriate when common questions are a significant aspect of a case and can be resolved in a single action. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004). Here, common questions predominate because Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Amchem*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Many of the Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Class Member has brought a separate claim, which would likely be consolidated into this Action anyway. And Plaintiffs foresee no difficulties in managing this Class for the purposes of settlement.

Class actions are vastly superior to individual actions with respect to securities fraud claims. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Thus, a class action is the superior method of adjudication.

33

Solely for the purposes of settlement, Defendants do not dispute that the Class should be certified in accordance with Rule 23(b)(3). The Court should preliminarily determine that class treatment is appropriate to permit notice to the Class.

## V.   THE PROPOSED NOTICE PLAN SATISFIES RULE 23(C)(2)(B)

The Proposed Order Granting Motion For Preliminary Approval Of Class Action Settlement ("Preliminary Approval Order"), which is attached as Exhibit A to the Stipulation, mandates that within fourteen (14) calendar days after the Court's Preliminary Approval Order, the Claims Administrator shall provide notice to Class Members by either (a) emailing the Summary Notice to Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed as Exhibit A-3 to the Stipulation[3] or (b) mailing the Postcard Notice substantially in the form annexed as Exhibit A-4 to the Stipulation, if an email address cannot be obtained, by first class mail, postage prepaid, to Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator. Also, within fourteen (14) calendar days after the Court's Preliminary Approval Order, Lead Counsel, through the Claims Administrator, shall cause the

---

[3] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an example of an electronic method of notice. Providing electronic notice to class members for whom an email address can be obtained will reduce administration costs and ultimately benefit the class. Similar electronic notice was permitted in actions pending in this District. *See, e.g., In re Akers Biosciences, Inc., Securities Litigation,* Case No. 18-cv-10521, ECF No. 40; *Hull v. Global Digital Solutions, Inc., et al.,* Case No. 16-cv-5153, ECF No. 65.

Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim and Release Form to be posted on the Claims Administrator's website.

The proposed Notice provides detailed information concerning: (a) the rights of Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name," and sets limits upon the per-piece payment available to such nominees so that the Settlement Fund is not depleted by unreasonable reimbursement requests. Within seven (7) calendar days after the emailing of the Summary Notice and mailing of the Postcard Notice, Class Counsel will cause the Summary Notice to be published electronically on *GlobeNewswire.*

The proposed Notice Plan is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts in this Circuit have approved Postcard

Notice directing class members to a detailed online notice. *See also Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No, 2:13-cv-6272-MCA0MAH, 2016 WL 7209649, at *3 (D.N.J. Oct. 13, 2016) (setting deadlines for mailing "postcard Notice," and for establishment of operational "Settlement Website.") *See also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.").

The proposed Notice also informs Class Members how to object or exclude themselves from the Settlement and clearly states that all those who do not exclude themselves from the Settlement will be bound by the Settlement and Final Judgment.

Furthermore, the proposed Notice provides for the PSLRA-mandated disclosures, as it: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and (4) provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel, who will be available to answer questions from Class Members. *See* 15 U.S.C. § 78u-4(a)(7).

The form and manner of providing Notice to the Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998).

The manner of providing notice here, which includes individual notice by email or mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of Rule 23. Thus, the proposed method of notice described above satisfies due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

## I.  PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Final Approval Hearing as set forth in the Preliminary Approval Order filed herewith:

| EVENT: | PROPOSED DEADLINE: |
|---|---|
| Deadline for Lead Counsel to provide notice to Class Members by either (a) emailing the Summary Notice to Class Members for whom the Claims Administrator is able to obtain email addresses, or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail, postage prepaid, to Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator | Not later than **14 days** after entry of Preliminary Approval Order |

| Deadline for Lead Counsel to cause the Summary Notice to be published twice in nationally-distributed, business-focused newswires | Not later than **21 days** after entry of Preliminary Approval Order |
| --- | --- |
| Deadline for Lead Counsel to file an affidavit of notice by emailing, mailing, and publication | Not later than **30 days** after entry of Preliminary Approval Order |
| Deadline for filing of papers in support of (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Lead Counsel for attorneys' fees or reimbursement of expenses (collectively, the "Applications") | Not later than **30 days** before Final Approval Hearing |
| Deadline for Class Members to submit/file: <br> • Proof of Claim and Release Forms, <br> • Requests to be excluded from the Class <br> • Objections to the Settlement, or any of the Applications | Not later than **21 days** before Final Approval Hearing |
| Deadline for filing reply to any opposition to the Applications or any response to any objection(s) filed | Not later than **7 days** before Final Approval Hearing |
| Deadline for Claims Administrator to submit report outlining implementation of notice and claims administration | Not later than **7 days** prior to the date of the Final Approval Hearing |
| Date of Final Approval Hearing | Approximately **100-110 days** after entry of Preliminary Approval Order |

Plaintiffs respectfully request that the Court schedule the Final Approval

Hearing for a date at least 100 calendar days, but not more than 110 calendar days,

after entering the Preliminary Approval Order. A setting in this range will allow enough time for Lead Counsel to mail the Postcard Notice and/or email the Summary Notice as appropriate, publish the Summary Notice, file the motion in support of final approval of the Settlement and the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses and awards to Plaintiffs, and the reply in support of final approval, and will allow Class Members enough time to learn about the Settlement, contact the Claims Administrator or Lead Counsel, if necessary, obtain the necessary information and documentation to submit their proof of claim forms and decide whether to exclude themselves or make objections to the Settlement.

## VI.    CONCLUSION

As set forth above, this Settlement results from extensive arm's-length negotiations, including a mediation session and continued negotiation over several weeks before the same mediator, and provides an above-average recovery for Class Members compared with similar settlements. The proposed Settlement meets the standard for granting it preliminary approval and Plaintiffs respectfully request that the Court grant them preliminary approval, make a preliminary determination that class treatment is appropriate, approve the form and manner of notice, and set a date for the final approval hearing.

Dated: February 4, 2022

**POMERANTZ LLP**

By: */s/ Brian Calandra*

Brian Calandra
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Fax: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: bcalandra@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Gonen Haklay*

Gonen Haklay
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
Email: ghaklay@rosenlegal.com
Email: lrosen@rosenlegal.com

**HAGENS BERMAN SOBOL
SHAPIRO LLP**

By: */s/ Shayne C. Stevenson*

Steve W. Berman
Shayne C. Stevenson
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**THE SCHALL LAW FIRM**

Brian Schall
Rina Restaino
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
Facsimile: (877) 590-0482
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Lead Plaintiff David Pendola*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February 2022, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Brian Calandra*